**CARLSON LYNCH, LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (CA 305051)
sbraden@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel:   (619) 762-1900
Fax:   (619) 756-6991

*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON IBARRA, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>THE FOLGER COFFEE COMPANY, an Ohio corporation, and DOES 1-20, inclusive,<br><br>　　　　Defendants. | Case No.:  **'20CV0850 L    BLM**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Ramon Ibarra ("Plaintiff" or "Ibarra"), on behalf of himself and all other similarly situated ("Class Members"), brings this consumer class action against Defendant, The Folger Coffee Company ("Defendant" or "Folgers"), for unlawful, unfair, and deceptive business practices in violation of California Business & Professions Code section 17200, *et seq.*, California Business & Professions Code section 17500, *et seq.*, and California Civil Code section 1750, *et seq.* and alleges as follows:

## I.   NATURE OF ACTION

1. Folgers coffee is a household name with sales comprising a significant portion of the $7.8 billion in net sales reported by corporate parent, The J.M. Smucker Company, during its last fiscal year. Notwithstanding its unmatched success, the coffee giant engages in widespread false and deceptive advertising on its staple coffee cannisters, depriving consumers of the benefit of the bargain. In a practice that clearly offends reasonable consumer expectations, Defendant engages in a classic bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing. The packaging and labeling of many Folgers coffee product cannisters (the "Coffee Products") prominently advertise that they will produce an amount of six fluid ounce cups when, in fact, they do not, and the label's advertised cup yield is completely arbitrary.

2. In Plaintiff's case, the cannister purchased—Folgers French Roast, Med-Dark—prominently advertises on its front label that it "MAKES UP TO 210 6 FL OZ CUPS." Instructions on the back panel of the cannister direct consumers to use the following measurements: "Cold Water: 1 Serving (6 fl oz)" with "Folgers Coffee: 1 Tablespoon" which yields "1 Serving (6 fl oz.)". This means that each French Roast cannister should contain 210 tablespoons of coffee. However, if the back-panel instructions are followed, the cannister only produces approximately 156 six fluid-ounce-servings, 54 short of what is advertised on the front panel. The cannister only contains approximately 156 tablespoons of ground coffee.

3. The same French Roast cannister also comes up short if the coffee is brewed in bulk and the back-panel's second instruction is followed. This instruction directs users to use "Cold Water: 10 Servings" with "1/2 Measuring Cup"[1] for "10 Servings." If 8 tablespoons generate 10 servings, then 156 tablespoons—the entirety of the cannister—produces 195 six fluid-ounce-servings,[2] 15 cups short of what Folgers represents on its front panel.

4. Other Coffee Products used to engage in the same scheme, which are also the subject of this action, are depicted in the chart in ¶ 6. These include several of Defendant's roasts in various strengths and sizes. In each Coffee Product, the top right corner of the front panel prominently and conspicuously states the number of cups the cannister will produce, as shown in the French Roast cannister Plaintiff purchased below:



5. The back panel contains the serving instructions "for best brewing results" and, significantly, goes on to state "This cannisters makes up to 210 suggested strength

---

[1] Or 8 tablespoons.
[2] 8/10 = 156/195.

6 fl oz servings." But the only serving suggestions on the product are those provided immediately above this statement, as set forth in ¶¶ 2-3 and depicted below:



6. As stated in in ¶¶ 2-3 above and depicted below in ¶ 6, these instructions or suggestions do not produce 210 servings. Consumers reasonably expect that if they follow the serving instructions, the Coffee Products will produce the number of servings/cups of coffee prominently advertised on their front and back panels. However, they do not. Tests performed on the Coffee Products, including the same French Roast cannister purchased by Plaintiff, showed that Defendant uniformly and systematically misrepresents its Coffee Products:

| Coffee Product | Strength | Weight | Advertised Number of Cups Per Coffee Product | Actual Measured Number of Cups (at 1 Tbsp per 1 cup serv.) | Measured Number of Cups (at 8 Tbsp per 10 cup servs.) |
|---|---|---|---|---|---|
| Folgers French Roast | Med-Dark | 686 g | 210 | 156 | 195 |
| Folgers 100% Colombian | Medium | 686 g | 210 | 156 | 195 |
| Folgers Black Silk | Dark | 686 g | 210 | 156 | 195 |
| Folgers Brazilian Blend | Medium | 686 g | 210 | 156 | 195 |
| Folgers Gourmet Supreme | Med-Dark | 686 g | 210 | 156 | 195 |
| Folgers House Blend | Medium | 686 g | 210 | 156 | 195 |
| Folgers Special Roast | Medium | 686 g | 210 | 156 | 195 |
| Folgers Classic Roast | Medium | 865 g | 240 | 175 | 219 |
| Folgers Class Decaf | Medium | 865 g | 240 | 175 | 219 |
| Folgers ½ Caff | Medium | 720 g | 210 | 152 | 190 |
| Folgers Coffeehouse Blend | Med-Dark | 720 g | 210 | 152 | 190 |
| Folgers Breakfast Blend | Mild | 720 g | 210 | 152 | 190 |
| Folgers Simply Smooth | Mild | 882 g | 240 | 176 | 220 |

7. At no time does Defendant inform consumers as to the true number of cups a Coffee Product will yield if the back-panel instructions are followed, or that they will not result in the advertised amounts of servings. Nor does Defendant inform consumers how at all it derived the "Makes Up To" figure stated on its front and back panels.

8. Plaintiff and Class Members relied to their detriment on Defendant's representations regarding the amount of servings each Coffee Product would produce and would not have paid to purchase Defendant's Coffee Products, or would not have paid as much as they did for said products, had they known the truth about the Coffee Products' actual serving yield according to its instructions. As a result, Plaintiff and the Class Members suffered monetary damages as a result of Defendants' deception and misrepresentations.

## II.     JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 Class Members; (2) Plaintiff is a citizen of the State of California and Defendant is a citizen of the State of Ohio; and (3) the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

10. The Court has personal jurisdiction over Defendant because it conducts substantial business in California. Defendant has and continues to actively market, promote, and sell the Coffee Products in the State of California through numerous retailers and online channels, and Defendant has sufficient minimum contacts with this State and/or has sufficiently availed itself of the market in this State through its marketing, promotion and sales within this State to render the exercise of jurisdiction by this Court permissible.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while Plaintiff resided in this judicial district.

## III.     PARTIES

**Plaintiff**

12. Plaintiff Ramon Ibarra resides in San Diego County, California. In or about December 2019, Ibarra purchased three cannisters of Folgers French Roast, Med-Dark, 210 Cups, for $12.59 each from Garden Farms Market, a grocery store located in Lakeside, California. Plaintiff read the Coffee Product's labeling stating that each cannister would produce 210 six-ounce cups of coffee before purchasing the Coffee Product. In reliance on this representation, Plaintiff purchased the French Roast for his own personal benefit.

13. Plaintiff would not have purchased the Coffee Product, or would not have paid as much as he did, had he known that Defendant misrepresented the amount of servings each cannister would produce. Plaintiff was further damaged in his purchase because Defendant's false advertisement artificially inflated the price of the Coffee Product as a

result of increased consumer demand generated by the false advertisement, which naturally led to an increase in the price charged.

14. Plaintiff is susceptible to this reoccurring harm because he cannot be certain that Defendant has corrected this deceptive and false advertising scheme, and he desires to continue to purchase Defendant's Coffee Products. Plaintiff greatly enjoys Folgers coffee and would purchase it fairly regularly and in different varieties, not just the French Roast. However, he currently cannot trust that Defendant will label and/or advertise the Coffee Products truthfully and in a non-misleading fashion in compliance with California law. Plaintiff simply does not have the resources to ensure that Defendant is complying with California and federal law with respect to its labeling and advertising of the Coffee Products.

15. Additionally, because of the breadth of Coffee Products involved in Defendant's deceit (at least 13), and the likelihood that Defendant may yet develop and market additional products that misrepresent the serving yield, Plaintiff may again, though by mistake, purchase a falsely-advertised product from Defendant under the impression that the product was improved.

**Defendant**

16. Defendant is a corporation organized and existing under the laws of the state of Ohio, with its headquarters and principal place of business at One Strawberry Lane, Orrville, OH 44667. Folgers has a rich history dating back to 1850 and is arguably the most well-known coffee maker in the United States. The coffee giant excels in offering a wide range of products to customers, including varying flavors, roasts and strength of coffee. Beginning in 1850 in San Francisco, Folgers is now a household name recognized and sold around the world. Since the early 1990s, it has been the largest-selling ground coffee in the United States. In the 1980s, Folgers' slogan "The best part of waking up is Folgers in your cup!" and the well-associated jingle became recognizable in households across the country, along with the Folgers name. Folgers generates millions of dollars in sales each year, a significant portion of which is derived from sales of the Coffee Products

in California.  In 2008, Folgers was acquired by J.M. Smucker from Procter & Gamble for a reported $3 billion.

17. Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sues such defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants is, in some manner, legally responsible for the damages suffered by Plaintiff and the Class Members as alleged herein.  Plaintiff will amend his Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## IV.  GENERAL ALLEGATIONS

18. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

19. Folgers' advertising and marketing of its Coffee Products is false, misleading and/or omits material information to consumers because consumers, including Plaintiff, expect that if the Coffee Product's back panel instructions are followed, the cannister will yield the advertised number of cups, which are prominently displayed on the front panel and restated on the back panel of the cannister.  However, nowhere on the Coffee Product packaging/label does Defendant notify consumers that the Coffee Product will not yield the number of cups represented if the instructions are followed.  Nor does Coffee Product packaging/label indicate how many cups will actually be produced if the instructions are followed, or even how the purchaser can brew the coffee to produce the advertised "Makes Up To" number of cups.  Instead, the "Makes Up To __ Cups" serving figure is completely arbitrary.[3]  This combination—the misrepresented "Makes Up To __ Cups" and the back-panel instructions resulting in the less servings—renders labeling of the Coffee Products inherently misleading.

---

[3] For instance, without any type of qualification or brewing instructions, consumers could conceivably produce 500 cups of coffee from a cannister if the coffee grounds were diluted enough.

20. The back-panel instructions of each Coffee Product clearly state that consumers should use either one tablespoon of ground coffee per six fluid-ounce-serving or a 1/2 cup (8 tablespoons) per ten six-ounce servings "for best brewing results." No other brewing suggestions, recommendations or instructions appear on the Coffee Products. Yet, Defendant completely fails to provide any methodology or measurements whatsoever as to how a Coffee Product can be brewed to produce the "Makes Up To __ Cups" amount that it advertises. Defendant similarly fails to indicate: (1) how many servings will result from following the instructions contained on the back panel and (2) that following the instructions will produce less than the "Makes Up To __ Cups" figure. These misrepresentations and omissions violate consumers' reasonable expectations and, as alleged herein, California's consumer protection statutes. The number of servings a Coffee Product yields according to its instructions can be determined with objective factual evidence, which shows that each Coffee Product is falsely advertised.

21. Throughout the class period defined below, Defendant has engaged in, and continues to engage in, an advertising and marketing campaign that misrepresents its Coffee Products. Defendant has engaged in, and continues to engage in, a pattern of willful conduct, through affirmative misrepresentations and/or material omissions, designed to mislead and lure consumers into purchasing Coffee Products they would not have otherwise purchased. As a result of this deception, Defendant has sold thousands, if not millions, of Coffee Products to unsuspecting consumers across California through its retailers and online sales channels.

22. Defendant's advertising claims are false, misleading and deceptive because Defendant willfully misrepresents and omits from its labeling of the Coffee Products material information to consumers' purchasing decision—viz. the number of coffee servings that each Coffee Product will produce. Defendant, thus, intentionally misleads consumers into purchasing its products based on its false advertising of the Coffee Products as having characteristics that they, in fact, do not have.

23. In making these false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would purchase the Coffee Products and pay more for them under the false but reasonable belief that each would produce more coffee servings than each Coffee Product actually does. The marketing of the Coffee Products as producing more coffee servings than they actually do demonstrates Defendant's awareness that the claim about the Coffee Products' serving yield is material to consumers, otherwise Defendant would not so prominently advertise how many cups of coffee each Coffee Product cannister produces.

24. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions. Plaintiff and Class Members reasonably relied—to their detriment—on Defendant's misleading representations and omissions. Such representations and omissions misled Plaintiff and the Class, and are likely to mislead the public, because, as alleged above, reasonable consumers understand that if they follow the only brewing instructions on the product, the Coffee Product will produce up to its advertised number of servings.

25. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (1) paid a sum of money more for a Coffee Product that was not what Defendant represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than what Defendant had advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than what Defendant represented.

26. Had Defendant not made the false, misleading, and deceptive representations and omissions as alleged herein, Plaintiff and the Class Members would not have purchased the Coffee Products or would not have paid as much for them. Consequently, Plaintiff and the Class Members suffered injury in fact and lost money or property as result of Defendant's wrongful conduct.

## V. CLASS ALLEGATIONS

27. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

28. Plaintiff brings this action on behalf of himself and all other similarly situated Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant for violations of California state laws:

> All consumers within the State of California who purchased any Folgers Coffee Product(s) advertising a number of coffee cups that the product would purportedly produce during the applicable statute of limitations and who have not received a refund or credit for their purchase(s). Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

29. <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff.

30. <u>Existence and Predominance of Common Questions of Law and Fact</u>: This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendant made false and/or misleading statements to the Class and the public concerning the cup yield in the Coffee Products;

    b. Whether Defendant omitted material information to the public concerning the actual cup yield of the Coffee Products;

    c. Whether Defendant's packaging for the Coffee Products is misleading and deceptive;

    d. Whether Defendant's advertising for the Coffee Products is misleading and deceptive;

e. Whether Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Coffee Products;

f. Whether Defendant's representations concerning the Coffee Products were likely to deceive a reasonable consumer;

g. Whether Defendant's omissions concerning the Coffee Products were likely to deceive a reasonable consumer;

h. Whether Defendant represents to consumers that the Coffee Products have characteristics, benefits, or qualities that the Coffee Products do not have;

i. Whether Defendant advertised the Coffee Products with intent to sell them not as advertised; and

j. Whether Defendant engaged in false advertising with respect to the Coffee Products.

31. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class Members because, *inter alia,* all Class Member have been deceived (or were reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the serving yield of its Coffee Products. Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class Members.

32. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Class.

33. <u>Superiority</u>: The nature of this action and the nature of the laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to him and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class Members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class

Members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class Members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct. Additionally, injunctive relief for the benefit of Class Members and the public would not be possible absent class treatment and Defendant's wrongful conduct would persist unabated.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**VIOLATION OF UNFAIR COMPETITION LAW ("UCL")**
CAL. BUS. & PROF. CODE § 17200, *et seq.*

34. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

35. The UCL defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. CAL. BUS. & PROF. CODE § 17200.

36. Plaintiff has standing to pursue this claim because Plaintiff has suffered injury-in-fact and has lost money or property as a result of Defendant's unlawful, unfair, and fraudulent actions. Specifically, Plaintiff purchased the Folgers French Roast Coffee Products for his own personal consumption. In doing so, Plaintiff relied upon the false representations that the Coffee Products would produce more servings than they actually did. Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

*"Unfair" Prong*

37. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

38. Defendant's conduct constitutes an "unfair" business practice because, as alleged, Defendant has engaged, and continues to engage, in a false advertising campaign that misleads consumers into believing that the Coffee Products they purchase will yield a greater number of servings than each cannister actually contains.

39. Defendant's conduct, as alleged above, was not motivated by any legitimate business or economic need or rationale, other than to maximize its profits at its customers' expense. The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives. Such conduct was and is designed solely to wrongfully extract monies from consumers, including Plaintiff, to which Defendant is not entitled. Defendant could have, but has not, used alternate means of effecting its legitimate business needs, such as by properly disclosing (1) how many servings would result from following the Coffee Products' brewing instructions; (2) that the instructions will produce less than the advertised "Makes Up To __ Cups" number of servings, or (3) how to measure and/or brew the coffee grounds to derive the "Makes Up To __ Cups" number of servings.

40. Defendant's conduct harms the interests of consumers and market competition. There is no valid justification for Defendant's conduct and Defendant's business practices, alleged herein, are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and Class Members because Defendant's conduct violates consumers' reasonable expectations. If the Coffee Products had been advertised in a non-misleading fashion, as Defendant could easily have done, Plaintiff and other Class Members could have considered other options for purchasing coffee grounds.

***"Fraudulent" Prong***

41. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

42. Defendant engaged in a fraudulent business practice by knowingly representing to consumers that the Coffee Products it sells will produce a greater number

of servings than each cannister actually does. Defendant's practice deceived Plaintiff and the Class, who purchased the Coffee Products in reliance on the advertised serving yield, and is highly likely to deceive members of the consuming public because, as alleged above, the practice violates consumers' reasonable expectations regarding how many servings each Coffee Product will produce. Such practice is devoid of utility and functions only to maximize Defendant's profits at the expense of the consuming public. Any benefit gained by Defendant's practice is far outweighed by the gravity of harm to Plaintiff and the Class, who lost money or property by paying for the Coffee Products.

43. Additionally, Defendant's fraudulent practice will continue to mislead its customers for the simple reason that it is virtually impossible for consumers to know if Defendant has stopped misrepresenting the serving yield of its Coffee Products until *after* the purchase is made. At the very least, consumers would have to perform copious mathematical calculations *in store* before purchasing a Coffee Product to determine if the "Makes Up To __ Cups" statement was accurate. Accordingly, the risk of harm to Plaintiff, the Class, and the public is ongoing.

*"Unlawful" Prong*

44. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

45. Defendant's actions, as alleged herein, constitute violations of the Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq.* (the "CLRA"). Particularly, Defendant has unlawfully marketed and advertised the Coffee Products in violation of CAL. CIV. CODE §§ 1770(a)(5) and 1770(a)(9), discussed further below in Plaintiff's Third Cause of Action.

46. Additionally, Defendant's actions, as alleged herein, constitute violations of the California's False Advertising Law, CAL. Bus. & Prof. Code § 17500, *et seq.,* (the "FAL"), discussed further below in Plaintiff's Second Cause of Action.

47. Each of Defendant's unfair, fraudulent, and unlawful practices enumerated above was the direct and proximate cause of financial injury to Plaintiff and the Class.

Defendant has unjustly benefitted as a result of its wrongful conduct. Plaintiff and Class Members are accordingly entitled to have Defendant disgorge profits and restore to Plaintiff and Class Members all monies wrongfully obtained by Defendant as a result of the conduct as alleged herein.

## SECOND CAUSE OF ACTION

### VIOLATION OF FALSE ADVERTISING LAW ("FAL")
### Cal. Bus. & Prof. Code § 17500, *et seq.*

48. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

49. Plaintiff has standing to pursue this claim because Plaintiff has suffered injury-in-fact and has lost money or property as a result of Defendant's false advertising. Specifically, Plaintiff purchased the Folgers French Roast Coffee Products for his own personal consumption. In doing so, Plaintiff relied upon the false representations that the Coffee Products would produce more servings than they actually did. Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

50. Defendant violated Cal. Bus. & Prof. Code § 17500 by publicly disseminating false, misleading, and unsubstantiated advertisements regarding the Coffee Products as alleged hereinabove.

51. Defendant's false and misleading advertisements were disseminated to increase the sales of the Coffee Products.

52. Defendant knew or should have known its advertisements for the Coffee Products were false and/or misleading.

53. Defendant knew or should have known that consumers, including Plaintiff and Class Members, would believe the Coffee Products would produce the number of servings prominently advertised on the Coffee Products if consumers followed the back panel serving instructions.

54. Plaintiff and members of the Class have suffered harm as a result of these violations of the FAL because they have paid monies for the Coffee Products that they otherwise would not have paid but for Defendant's false and misleading statements.

55. Plaintiff and the members of the Class seek an order awarding Class-wide restitution of all monies and disgorgement of profits wrongfully acquired by Defendant as a result of the conduct alleged hereinabove and Defendant's failure to disclose the existence and significance of said misrepresentations.

## THIRD CAUSE OF ACTION

### VIOLATION OF CONSUMER LEGAL REMEDIES ACT ("CLRA")
### CAL. CIV. CODE § 1750, *et seq.*

56. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

57. Plaintiff has standing to pursue this claim because Plaintiff has suffered injury-in-fact and has lost money or property as a result of Defendant's unlawful business practices. Specifically, Plaintiff purchased the Folgers French Roast Coffee Products for his own personal consumption. In doing so, Plaintiff relied upon the false representations that the Coffee Products would produce more servings than they actually did. Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

58. The CLRA was enacted to protect consumers against unfair and deceptive business practices. The CLRA applies to Defendant's acts and practices because the Act covers transactions involving the sale of goods to consumers.

59. Plaintiff and the members of the Class are "consumers" within the meaning of CAL. CIV. CODE § 1761(d) and they engaged in "transactions" within the meaning of CAL. CIV. CODE §§ 1761(e) and 1770, including the purchases of the Coffee Products.

60. Defendant is a "person" under CAL. CIV. CODE § 1761(c).

61. The Coffee Products are "goods" under CAL. CIV. CODE § 1761(a).

62. Defendant's unfair and deceptive business practices were intended to and did result in the sale of the Coffee Products.

63. Defendant violated the CLRA by engaging in the following unfair and deceptive acts and practices:

§ 1770(a)(5)   Representing that the Coffee Products have characteristics . . . which they do not have.

§ 1770(a)(9)   Advertising goods or services with intent not to sell them as advertised.

64. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the Class Members suffered injury and damages in an amount to be determined at trial.

65. On information and belief, Defendant's actions were willful, wanton, and fraudulent.

66. On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of the misleading statements and material omissions regarding the Coffee Products.

67. Plaintiff has concurrently filed the declaration of venue required by Cal. Civ. Code § 1780(d) with this Complaint.

68. On May 5, 2020, Plaintiff, through counsel, sent a CLRA demand letter to Defendant that provided notice of Defendant's violation of the CLRA and demanded Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA.  If Defendant does not respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782, Plaintiff will amend his complaint to seek actual, punitive, and statutory damages, as appropriate against Defendant.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays on behalf of himself and all others similarly situated, for judgment against Defendant as follows:

A. Certifying the Class as requested herein, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;

B. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth above;

C. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

D. Ordering Defendant to engage in a corrective advertising campaign;

E. Awarding Plaintiff and Class Members their costs and expenses incurred in the action, including reasonable attorney's fees; and

F. Providing such further relief as may be just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims presented herein so triable.

Dated: May 5, 2020

**CARLSON LYNCH, LLP**

By: */s/ Scott G. Braden*
Scott G. Braden (CA 305051)
sbraden@carlsonlynch.com
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel:   (619) 762-1900
Fax:   (619) 756-6990

*Attorneys for Plaintiff and the Class*